### Harrison Baker v. The State.

No. 1004.    Decided October 18, 1911.

Rehearing withdrawn April 3, 1912.

**1.—Theft of Cattle—Sufficiency of Evidence.**

Where, upon trial of theft of cattle, the evidence sustained a conviction, there was no error.

**2.—Same—Ownership—Brand.**

Where, upon trial of theft of cattle, ownership was established not solely by the owner's brand, but by other evidence, there was no error.

**3.—Same—Bill of Exceptions.**

The allegations in the bill of exceptions must be full and explicit, so that the matters presented to the court may be comprehended without recourse to inference.

**4.—Same—Bill of Exceptions.**

The allegations in the bill of exceptions must be so explicit as to enable the Appellate Court to fully understand all the facts upon which the correctness or error of the ruling depends.

**5.—Same—Bill of Exceptions.**

The bill of exceptions must set out the proceedings in the court below sufficiently to enable the Appellate Court to know that an error has been committed.

**6.—Same—Bill of Exceptions.**

The bill of exceptions must be so full in its statements that in and of itself it will disclose all that is necessary to manifest the supposed error, and must state enough of the evidence or facts proven to render intelligible the rulings excepted to.

**7.—Same—Bill of Exceptions.**

A bill of exceptions can not be aided either by a statement in reply to a motion for new trial, or by the statement of facts; it controls even the statement of facts.

**8.—Same—Bill of Exceptions.**

Objections in the bill of exceptions, or the mere statement of the ground of objection in it, is not the certificate of the judge that what is stated is true. Following James v. State, 63 Texas Crim. Rep., 75, and other cases.

**9.—Same—Charge of Court—Defensive Theory.**

Where, upon trial of theft of cattle, the court's charge clearly presented the law and applied it to the facts, and did not authorize the jury to do either or any of the things claimed in the attack thereon, but was favorable to the defendant, as far as the evidence allowed it, there was no reversible error.

**10.—Same—Requested Charges.**

Where it did not appear from the record that the requested charges had been refused, and besides, were substantially covered in the court's main charge, as far as they were applicable to the facts, there was no reversible error.

Appeal from the District Court of Chambers. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*R. J. McMurrey* and *Stevens & Pickett,* for appellant.—On question that record of brand must designate particular part of animal: Steed v. State, 43 Texas Crim. Rep., 567; Massey v. State, 31 Texas Crim. Rep., 91; Reese v. State, 67 S. W. Rep., 325.

On question where brand is recorded after alleged theft: Welch v. State, 60 S. W. Rep., 46; Turner v. State, 45 S. W. Rep., 1020.

On question of unrecorded brand: Sapp v. State, 77 S. W. Rep., 456; Chowing v. State, 51 S. W. Rep., 946.

On question of court's charge: Denton v. State, 60 S. W. Rep., 670; Walton v. State, 55 S. W. Rep., 566.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On March 16, 1910, the appellant was indicted by the grand jury of Chambers County for the theft of one head of cattle on or about February 8, 1910, the property of A. D. Middleton. He was convicted and given the lowest penalty, two years imprisonment in the penitentiary.

The testimony clearly sustains the conviction. We do not propose to give but a brief statement from the evidence.

Middleton, the alleged owner of the one head of cattle, testified that on February 8, 1910, he saw some cattle of his in appellant's possession; that since his father's death he had been giving the J. H. 9 brand. "That top brand there in the book and the brand my father gave." That sometime in February, 1910, he found one head of cattle in the possession of the appellant at his, appellant's, place; that when he first saw the yearling it was in appellant's lot. He then describes the lot as at appellant's house and the testimony by the State's witnesses shows that the appellant's house was some hundred to one hundred and fifty yards from the public road and that the lot and cattle were back of the house and could not be seen from the road because of shrubbery, bushes, etc., which prevented. It was

also shown by other witnesses that the appellant on the same day, and repeatedly for two or three weeks before then, had claimed this particular yearling and some twenty-four or more others and had repeatedly driven them up from the outside into his lot and little pasture.

This witness Middleton further testified: "The color of the yearling I found was, I call it, a yellow red. It was about a year old. With reference to whether there was any other brand on that brute except mine, well, there was J. H. U. or U. H. U. on it, part of it fresh, some of it looked to be burned over, some had not been burned but once and some twice. I could tell it had been defaced before that. Before it had been defaced the J. H. 9 brand was on it and that was my brand. That was my brute. I did not give this defendant my consent to take it or any one else. I was looking after those cattle at that time and I had charge of them. When I first saw my yearling Henderson Baker was not there; we went up there and Henderson Baker was not there but his boy was there. He finally came before I left. . . . I saw the yearling in his lot when I first got there— not right around his barn but in a small lot outside. That lot was completely enclosed. . . . This lot that I found this yearling in when I first got there was Henderson Baker's lot. It was closed up and had gates and they were shut." This witness and several others show clearly that there were twenty-five head of yearlings in appellant's lot including this one, at this same time, and he is shown by other witnesses to have been claiming and driving up from out of others' fields these cattle from time to time for two or three weeks immediately preceding this particular date. This witness further shows that he had some seven or eight hundred head of cattle running around in this same country, and that this particular yearling and others of his cattle were gentle and that most of his cattle around in that neighborhood were gentle; that it would eat cotton seed hulls and did so on this occasion when a test was made at the time; that wild cattle would not eat cotton seed hulls unless they were somewhat starved to it, and that it took several days before they would do so.

Sid Wilcox, another witness for the State, showed that on the morning of February 8, 1910, he, with others, including Middleton, went to appellant's house and found about twenty-five head of cattle, including this one alleged to be Middleton's, and that they were penned up in a lot back of appellant's house; that the lot was inclosed with a fence so that it not only held a cow, but yearlings away from their mothers. "I found in that pen one of Mr. Middleton's cattle. The brute was a bull yearling branded but unmarked. The original brand on that brute was J. H. 9 which was Archie Middleton's brand. That brand had been defaced into something else. That which appeared on the brute at that time was U. H. U., I would call it. There was a difference in that part of the brand and the other. The J. H. 9 part was the older. The J. H. 9 had been well and the other part,

I think it was peeled off but not well yet. . . . The old brand showed plain to me as day. I could tell the new from the old brand as it had been burned over and you could tell it."

This witness further shows that after he found these yearlings in appellant's pen he left there and went to a store, the distance not given, where he met appellant and talked about buying his yearlings. The appellant then claimed that he had twenty-five yearlings belonging to him in his pen which he wanted to sell, and upon this witness offering to buy them he claimed that he could not then make a trade with him, because he had given another party the opportunity to first buy and could not sell to this witness until he heard from the other party. This witness then went with him from this store to appellant's residence and he talked about the yearlings and claimed them all until he got there and found Middleton, the sheriff and others there. Thereupon he claimed only one of them. After they got back to the pen where the yearlings were, the appellant claimed that they would not eat cotton seed hulls and that he had no feed of that kind. Some one present then went to appellant's crib and got a sack of hulls to test whether the yearlings would eat them or not, and took it out and poured it in the troughs. All of the yearlings, including Middleton's, at once ran up to the troughs and began to eat the hulls.

Both of these witnesses, Middleton and Wilcox, the first thirty-four years of age, and the latter forty years of age, testified that they had been in the cattle business all their lives and showed their familiarity therewith.

In the presentation of this case in appellant's brief his attorneys claim that the ownership of Middleton of the yearling charged to have been stolen was attempted to be established solely by his brand. We have gone over the testimony several times and especially on this point and it is our opinion that the contention of the appellant on this point, from the testimony, is not borne out, but that the testimony tends to show that the witnesses identified the yearling as Middleton's without restricting their testimony to the brand alone.

Appellant has four bills of exceptions in the record. The State objects to the consideration of each of them by this court because they do not comply with the rules and are insufficient and are so indefinite that this court can not determine properly the questions attempted to be raised thereby.

We will give practically in full the first bill, so that therefrom it can be determined whether they should be considered by this court. The first bill, omitting the style, number and court, is: "Be it remembered, that on the trial of the above styled cause in this court, on September 13, 1910, the following proceedings were had, to wit: 'The State proposed to offer in evidence a brand of Dave Middleton, recorded on page 18 of the Brand Record of Chambers County, Texas, said brand the State so proposed to offer in evidence being *JΓ* ; whereupon, defendant objected to the admission of said brand

and the record thereof, for the reason that when same was recorded, on January 7, 1876, the law provided that the county clerk of Chambers County, when recording a brand should designate the part of the animal on which it should be placed, and subjected him to a penalty for failure to do so, and this record does not indicate the part of the animal said brand should be placed on, and it is therefore illegally registered and not admissible in evidence. And defendant further objected to such evidence on the ground that the record disclosed that the same party, Dave Middleton, recorded at that same time five brands in his own name in violation of law, as the law provided that he could only record one brand. The said page 18 of the Brand Record showing said five brands were so recorded by Dave Middleton at the same time, is as follows: 'David Middleton Brand (thus)  ⅄ſ .' Then under this there is a ditto mark under each of the words 'David Middleton' 'Brand' 'Thus,' and then a character indicating a brand right under the one first just given. It is unnecessary to give these as they would throw no light on the question. Then follows this: 'David Middleton's Ear Marks to wit: Ear Mark. Swallow fork in right ear, crop in the left ear. Ear mark. Swallow fork and under bit in one ear, crop and under-half crop in the other. Recorded January 7, 1876.' The signs for ears and the marks are included in this last quotation in the record but they are unnecessary to be given here as they would serve to illustrate no question. Then the bill concludes: 'Which objections the court overruled and admitted said brand in evidence. To which action of the court in admitting said evidence over said objection, defendant then and there in open court excepted, and now tenders this as his bill of exceptions No. 1, and prays that same be approved and ordered filed as a part of the record in this cause.' "

We have recently had occasion to investigate and restate the rules that have uniformly been followed by this court as to the necessary requisites of a bill of exceptions. We will not cite all the authorities again, but will merely briefly state the substance of these rules. The allegations in the bill must be full and explicit so that the matters presented to the court may be comprehended without recourse to inference. They must be so explicit as to enable the Court of Appeals to fully understand all the facts upon which the correctness or error of the ruling depends, otherwise it will not be considered. It must set out the proceedings in the court below sufficiently to enable the court on appeal to know that an error has been committed. It must be so full in its statements that in and of itself it will disclose all that is necessary to manifest the supposed error, and must state enough of the evidence or facts proven to render intelligible the rulings excepted to. It can not be aided either by a statement in reply to a motion for new trial or by the statement of facts. It controls even the statement of facts. Objections in the bill or the mere statement of the

ground of objection in it, is not the certificate of the judge that what is stated is true.

For a collation of the authorities establishing these rules and some of the cases following them see White's Code Criminal Procedure, sections 857 and 1123, and many recent cases decided by this court since these cases were collated by Judge White, among them James v. State, 138 S. W. Rep., 612; Conger v. State, not yet reported.

Tested by these rules this bill is so fatally defective and so patent that it is unnecessary to specifically point out its defects. We deem it unnecessary to give either of the other three bills by appellant. Each of them are as fatally defective, if not more so, than the one above copied.

We, therefore, sustain the State's contention that these bills are insufficient to require this court to consider them. However, we desire to state that in the investigation of the record and these bills that even if they could be considered as raising the points attempted to be raised thereby, that they do not show any reversible error. Appellant's attorneys have presented an able brief and cited many cases. It may be that the propositions of law asserted by them in their presentation of these several bills are correct but their application to this case is by no means conceded.

The appellant by his brief presents but five assignments of error, though many grounds are set up in the motion for new trial. Under the first three of these assignments are presented three of said bills of exceptions. Under the fourth assignment is presented an objection to the court's charge and under the fifth is presented the refusal of three special charges claimed to have been requested by appellant, and in the same connection, some complaints are made of the court's charge.

By his fourth assignment he attacks this portion of the court's charge which is a separate paragraph thereof: "You are further charged that should you find from the evidence beyond a reasonable doubt that the animal in question (the one claimed by Middleton) was the property of said A. D. Middleton, yet you find that the said animal voluntarily went into the defendant's lot or pasture or got in there otherwise than through the act or agency of defendant, then you will acquit the defendant, or if you entertain a reasonable doubt upon this point, that is as to whether or not the said animal went of its own will into the defendant's lot or pasture or got there otherwise than by the act of the defendant, then you will give the defendant the benefit of such doubt and acquit him." The attack on this charge is that thereby the jury was permitted to convict appellant if they found that he simply drove the cattle into his pasture, although at the time of such driving he had no intention to steal them. Also that it allowed a conviction if the jury found that an agent of defendant drove the animal into his pasture, and claims that there is no testi-

mony whatever in the record upon which to place such an issue—that is that there was no evidence that any agent of the defendant at any time had anything to do with the animal.

We have carefully considered the whole charge of the court and, in our opinion, it presents clearly the law of the case to the jury and applies the law to the facts properly. We believe that this particular portion of the charge complained of does not authorize the jury to do either or any of the things claimed in the attack thereof. On the contrary, we think it is very favorable to the appellant as much, if not more so, than the facts and the law authorized. It is elementary that the whole of a charge in a case must be considered together. That different paragraphs or sentences thereof must be considered in connection with the whole.

Appellant in his fifth assignment complains of the refusal of the court to give three special charges which he claims to have requested and were refused by the lower court. There appear in the record what purports to be three special charges requested by the appellant, but neither of them shows that the judge either refused or gave them. Certainly the judge did not, as shown by either, authenticate it by his official signature as having been refused. Under such circumstances we can not consider the charges as having been requested and refused. We have carefully considered each one of these charges, however, and it is our opinion that in so far as either was proper to be given it was substantially covered by the court in the main charge given, and even if they had been requested and refused, their refusal does not show reversible error.

The judgment will, therefore, in all things be affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

[Rehearing withdrawn April 3, 1912. This case should have appeared under April, 1912.—Reporter.]

