**Pete TREVINO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55059.**

Court of Criminal Appeals of Texas, Panel No. 1.

April 4, 1979.

Rehearing En Banc Denied June 27, 1979.

---

John R. McFall, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and Sam Oatman, Asst. Crim. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

### OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for murder. Punishment was assessed at eight years' imprisonment.

Appellant's first ground of error alleges that jury misconduct occurred after the jury retired to deliberate on appellant's guilt or innocence when new evidence was presented to the jury by a juror concerning the design or layout of the premises in which the shooting occurred and the location of the bullet holes. Two jurors testified at the hearing on appellant's motion for new trial. Juror Hodges, testifying for the appellant, related the following:

Q. All right. Now, was there ever any dispute, once again, between you and the other jurors relative to the location of the bullets in the house?

A. Yes, sir. There was.

Q. All right. If you would, just expound on that some, please, ma'am?

A. All right. We had the drawing that Mrs. Wilson had done of the house.

Q. The exibit (sic), the diagram?

A. Right.

Q. Okay. Go ahead.

A. All right. At any rate, they were knocking down the fact that I said that the man could stand in one place and not follow Mr. Wilson to the back door.

And they said they (sic) he couldn't have done that, couldn't have stood there. This is what the controversy really was over, was whether or not Mr. Trevino had stood still and shot the bullets, or whether he had followed Mr. Wilson clear through the house.

Q. I see. All right.

A. All right. They said that the bullets were in the far back door, back in the back, way back, like way back right outside.

Q. All right.

A. And I felt like it ought to be more toward the front, you know.

And one of them jumped up, I don't know what his name is, I think it was a tile layer, or a contractor and he said that he had worked in a lot of those houses in that part of town where this house was. He said that those houses are very small, but there is sharp corner, that the door facings were very narrow, and that Mr. Trevino would have to go completely through there in order to get the bullet in the back of the door.

The State called the jury foreman, juror Cox, who testified that the dimensions of the living room and house were discussed during deliberations, but that he could not remember or recall whether one of the jurors actually related his personal knowledge of the houses in that area. Thus, juror Hodges' testimony concerning the introduction of new evidence during the deliberations of the jury went uncontroverted by the State.

The significance of this "new evidence" lies in the fact that the appellant was relying on a theory of either self-defense or voluntary manslaughter. The statement by the juror concerning the layout of the home and the necessary conclusion that appellant followed the deceased through the home while firing at him was of such a character as to negate the appellant's theory that he responded to a perceived threat without conscious deliberation.

■ Article 40.03, V.A.C.C.P., states:

"New trials, in cases of felony *shall* be granted for the following cause, and no other:

7. Where the jury, after having retired to deliberate upon a case, has received other testimony; . . ."
(Emphasis added)

When it is established, by uncontroverted evidence, that the jury has received other evidence after retiring to deliberate the cause and that "evidence" is detrimental to the defendant, a new trial must be granted. See *Rogers v. State*, Tex.Cr.App., 551 S.W.2d 369; cf. *Honeycutt v. State*, 157 Tex.Cr.R. 206, 248 S.W.2d 124. As stated in *Rogers*:

"The statutory provision here applied was designed by the Legislature to guarantee the integrity of the fundamental right to trial by jury by restricting the jury's consideration of evidence to that which is properly introduced during the trial. To adequately safeguard that right from erosion, the Legislature in its wisdom created a per se rule. It is the duty of this Court to follow that mandate." Id. at 370.

■ Not only was the statement of the juror concerning the location of the bullets new evidence, but his statement concerning the location of the bullets was erroneous. It is noted that the testimony of State's witness Bustos relates that he observed bullet holes in the seat by the table where he was sitting and "the others were in the right-hand side of the door area, as you go from the dining room to the kitchen, right-hand side." Although Officer Coon's testimony was vague as to the precise location of the bullet holes in the door facing, it is consistent with the testimony of State's witness Bustos. Officer Coon testified that two slugs were recovered from the northwest corner of the house in the kitchen area, two bullets were recovered from "the door facing," one from the deceased, and one hole was in the floor under the table.

All this evidence is consistent with the testimony of the appellant when read in conjunction with the diagram of the house in State's Exhibit No. 3. We can only conclude that the statements made by the juror during deliberations constituted new evidence, were erroneous, and operated to prejudice the appellant's case (although we need not "speculate on the probable effects on the jury or the question of injury" resulting from such new "evidence"). See *Rogers v. State*, supra; Note 802 to Article 40.03, V.A.C.C.P.

In light of our disposition of this ground of error, we need not address appellant's other contentions.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The majority reverses this cause because of alleged jury misconduct which tended to refute his contention of self-defense.

Trevino testified that he shot and killed the deceased. There was an attempt to raise the issue of self-defense. Even though it appears that no such issue was raised, the cautious trial judge charged on self-defense and defense from the acts of another and defense of another. Some of the facts need be discussed to see if there was error and, if so, was it harmful.

Canderlia Wilson was married to Raul Wilson, the deceased, at the time of the offense. On June 1, 1974, at about 3:00 p. m., appellant came to their home and went into the back yard where the deceased and Manuel Garza were. Appellant and the deceased argued. Appellant stayed there some twenty minutes. Appellant left and returned some time later. He came to the front door and stated that he had returned for his bottle. At this time her husband was seated in the dining room drinking a beer. She got the bottle to return it. Appellant entered the house and was standing next to her. She walked back to close the door and she heard some five or six shots in the dining room. As she was going toward her husband, appellant said, "Don't get in my way, you son-of-a-bitch, because I will let you have it." She found her husband lying face down in the kitchen. She turned him over in her lap and saw bullet wounds in his chest and leg.

David Bustos testified he was at Raul's house at the time of the shooting. He was on the way to his car to get a bottle of whiskey when he met appellant who had his hand on the handle of what looked like a .38 caliber pistol in his right rear pocket. Bustos ran to some bushes and stopped. He then heard some four or five shots. As appellant left the house, Manuel Garza fired one shot at him with a .22 caliber pistol. Bustos tried to render first aid to Raul, but he died there in the arms of Bustos. He saw bullet holes—"One was in the seat, where I was sitting at first, and the others were in the right hand side of the door area, as you go from the dining room to the kitchen, right-hand side . . ."

Troy Coon of the Lubbock Police Department testified that there had been one shot into the table that went in the floor but that they did not recover the bullet. They recovered two or three bullets in the house and one from the body of the deceased.

Officer William Allen testified, among other things, that the body was found at the rear kitchen door.

Dominga Trevino, wife of appellant, testified that while her husband was in a hospital the deceased came by early in the morning of February 20, 1974, and asked to spend the night with her, but he left when his wife drove up. She testified that on May 18 deceased put his arm around her in a grocery store and that she slapped him. She testified that on June 1, 1974, the day of the homicide, she went to Levelland at the request of her husband and that he turned himself in two days later.

Appellant testified that his wife told of advances made by deceased toward her once while he was in the hospital. He related that he called the deceased and his wife and told him not to bother his wife anymore. Later the deceased called and stated that if appellant wanted to get out of the hospital

alive not to call his home anymore. He also testified that the deceased bothered his wife again at a grocery store some two weeks "before I shot him." He also related that he was driving by the home of the deceased and he stopped to pay "Candy" some $10.00 that he owed her. He got into a discussion with the deceased who asked if he wanted to fight over it and appellant said, "I will if I have to. Let's go in the alley."

They then went into the alley and he saw that Manuel Garza had a tire tool in his hand. Appellant then started walking to his car and the deceased said that he would get him that bitch of his before the day was over.

Appellant left and went to a pawnbroker's and bought a gun and then went back to the Wilson house with it in his pocket. He did not intend to kill Wilson but just to scare him. When he went to the house he saw that Manuel Garza had a gun in his hand. After a conversation, Wilson said, "I'll teach that bitch", and started walking toward him. Wilson further said, "I'll kill you now", and "I just started shooting", and "he kind of stopped like", and that as he left, Manuel fired a shot at him. He testified that he did not try to defend himself against Manuel Garza. He never saw Raul Wilson (the deceased) with a gun.

First, it is contended that the court erred in overruling the motion for new trial because of jury misconduct. In this connection, the motion for new trial alleges as follows:

"Defendant would further show that the jury was guilty of misconduct as is shown in the attached affidavit wherein the juror Hodges requested to hear the testimony related to the position of the bullet holes in the house and was told she would not be allowed to do so and specifically this part of the testimony was directly connected to her opinion of the defendant's right of self defense wherein all the other jurors said that the testimony showed that the defendant had to have followed the deceased through the kitchen to the back door and in this con-

nection defendant would show that there was no testimony to this effect and had the testimony of the witness Coon been played back it would have showed the position of the bullets which would have supported the juror Hodges and she would not have voted for guilty of murder.

"Defendant would show that the jury was guilty of misconduct in that it received new evidence after it began its deliberation in that one of the jurors related his expertise of a .38 caliber pistol and told the jury many things about how you had to operate the pistol and used this information as the basis for finding the defendant guilty of murder and this new testimony coupled with and together with the other instances of misconduct directly affected the juror Hodges' vote and caused her to finally, after approximately 3 hours to change her vote of guilty of the offense of murder which was in effect a coerced vote.

"Defendant would further show that after the verdict of guilty was read by the Judge the defendant immediately requested that the jury be polled which was done but as is reflected in the affidavit of juror Hodges, she did not know that she could inform the Court that this was not her verdict and that she wanted to change the same and had she known that she could have so informed the Court she would have and would not have thereafter changed her vote in any matter and would not have voted guilty to the offense of murder."

To the contentions that she did not know that she could tell the court that the verdict was not hers, we perceive no error. The court polled the jury, and she stated the verdict was hers. She cannot impeach her verdict by what she might have done.

She also stated that she did not know that the jurors could examine the pistol or other evidence. This is contrary to the court's charge. The court instructed the jury that they could ask for any evidence that was introduced, all she had to do was to ask the court. The reason behind her

vote cannot be used to impeach her verdict. *Adams v. State*, 481 S.W.2d 884 (Tex.Cr. App.1972).

Actually, self-defense was not raised. See *Mahaffey v. State*, 471 S.W.2d 801 (Tex.Cr.App.1971). The court did charge on self-defense and the defense of appellant's wife. There was no dispute at the trial on the location of the bullets. The evidence to support any defensive issue would be that of appellant. He testified that he offered to go to the alley to fight Wilson but left when he saw that Garza had a tire tool. After he left he went to a pawnshop and bought a .38 caliber pistol and returned some forty minutes later to the Wilson home. He related that he did not go back to shoot Wilson. This would show that he was not there to prevent Raul Wilson from harming appellant's wife. No defense of her person was involved. He also testified that he was not defending against Garza.

The strongest evidence for an issue of self-defense was that Wilson walked toward him and said that he was going to kill him. The evidence shows that Wilson was not armed. The appellant did not testify that Wilson made a threatening gesture toward him or that he thought Wilson was armed. He testified that he did not see a gun on Wilson and that Wilson had stopped before appellant shot. Walking toward someone does not raise an issue of self-defense where serious bodily injury or death is threatened. If one can kill someone in self-defense for walking toward him, the law of self-defense should be changed. Since appellant admitted the killing and no issue of self-defense was raised, we should hold that the court did not abuse its discretion in overruling the motion for new trial.

No reversible error is shown. The judgment should be affirmed.