John Maxwell HUNT, Appellant,

v.

The STATE of Texas, Appellee.

No. 63132.

Court of Criminal Appeals of Texas, Panel No. 1.

June 4, 1980.

Rehearing Denied Sept. 10, 1980.

Jim Law, Dallas, for appellant.

Bill M. White, Dist. Atty., James W. Blagg, Elizabeth H. Taylor and Douglas V. McNeel, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and DALLY, JJ.

## OPINION

ONION, Presiding Judge.

This appeal was taken from a conviction for murder, V.T.C.A., Penal Code, § 19.02. Punishment was assessed by the jury at eighteen (18) years' confinement.

The record reflects that on the night of October 31, 1977, police patrol officers were called to appellant's home in San Antonio, in response to a report that someone had died there, apparently of natural causes. Appellant, who had made the call to the police, met the officers upon their arrival. He led them into the living room, where the body of Adele Hunt, appellant's mother, lay on the floor. It was later determined that Mrs. Hunt had resided at appellant's home. Appellant had been the only other person present when the officers arrived, and he appeared to them to be intoxicated and rather calm. Blood stains were noticed on appellant's shirt, and there was dried blood on his fingers. The deceased had a bruise next to her left eye, and had bled from the ears. The blood was dry when the officers arrived.

Emergency medical technicians arrived shortly thereafter. They confirmed that Mrs. Hunt was dead, and probably had been for an hour or longer. Based on examina-

tion of the body by detectives at the scene and conversation with appellant, a preliminary conclusion was reached that the deceased had suffered a "sudden apparent natural death."

The next morning, however, an autopsy of the deceased's body disclosed the presence of ligature or cord marks around her neck. Based on this and other information, the Medical Examiner's office reclassified the case as a homicide by strangulation.

Homicide detectives, along with officers from the Medical Examiner's office, went to appellant's home that afternoon and spoke with appellant, who was there with his wife. After being assured by appellant that the house had been secure prior to Mrs. Hunt's death, and after finding no indication of forcible entry, the officers warned appellant of his rights under Article 38.22, V.A.C.C.P. After waiving his rights, appellant orally admitted having killed his mother and led the officers to an electrical extension cord, which he said he had used to strangle her. The cord had blood on it, later found to match the deceased's blood type. The cord was voluntarily surrendered to the officers, and appellant was arrested and jailed. Upon advice of counsel, he declined to execute a written statement. Appellant was subsequently indicted for murder, allegedly caused by strangling the deceased "with a ligature."

At trial, the State's witness on the cause of death was Dr. Nina Hollander of the Bexar County Medical Examiner's office. She testified that she had performed an autopsy upon the body of the deceased. The autopsy revealed ligature marks around the neck, and numerous broken blood vessels about the face and eyes. Internal examination disclosed, among other things, numerous hemorrhages in the throat area, congestion of the lungs, and a fracture of the left side of the hyoid bone, a bone located high up in the neck. Since such a fracture requires considerable force,

the doctor stated, it is usually associated with manual, or hand, strangulation as opposed to ligature strangulation. In fact, she stated she had never before seen a ligature strangulation in which the hyoid bone was fractured. The doctor further testified that to kill someone by strangulation, one would have to deprive his victim of oxygen for approximately ten minutes. She stated that in her opinion death was caused by both manual and ligature strangulation.

For the defense, Dr. George Race testified that the findings of Dr. Hollander's autopsy report would support a conclusion of death by manual strangulation, but not by ligature, even as a contributing cause. He based this conclusion on the fact of the fractured hyoid bone, the damage to the internal throat tissues, and evidence of finger marks around the neck.

Appellant also gave testimony, which was to the effect that he had begun strangling the deceased with the extension cord. After a few seconds, however, the cord began hurting his hands, so he quit using it and strangled her to death with his bare hands. He stated that he could not have used the cord for as long as fifteen seconds, and that it was probably closer to five seconds.

On appeal, among other grounds, appellant urges that reversible error was committed in the receipt by the jury of other evidence after retiring to deliberate on guilt. He contends that under Article 40.-03(7), V.A.C.C.P.,[1] he was thereby entitled to a new trial, and thus the trial court erroneously overruled his new trial motion. This alleged error was properly raised by appellant's motion. *Resnick v. State*, 574 S.W.2d 558 (Tex.Cr.App. 1978).

At the hearing on the motion for new trial, juror Patricia Lupia first testified that she had relied only on the testimony at trial in reaching her decision to vote to convict appellant of murder. She had also executed an affidavit to this effect. How-

---

1. The statute, as here relevant, states,

"New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

\* \* \* \* \* \*

"(7) Where the jury, after having retired to deliberate upon a case, has received other evidence . . . ."

ever, upon questioning by defense counsel, she did admit that during deliberations, juror Ed Moody had stated in the presence of the jury that he knew that a cord could kill somebody "real quickly," because Mr. Moody had been taught how to use one in Marine Corps training. Mrs. Lupia also admitted having told defense counsel that she had been "one of the doubters" as to the cause of death. When asked "You doubted it [the death] was caused by ligature?" she had stated, "It was a question in my mind."

■ In order to mandate a new trial, the "other evidence" must (1) be received by the jury and (2) be detrimental to the defendant. *Trevino v. State*, 582 S.W.2d 111 (Tex.Cr.App. 1979). If there is conflicting evidence on the issue of whether the jury received the evidence, a fact question is presented, and the trial court's determination of the question will be overturned on appeal only if an abuse of discretion is shown. *Honeycutt v. State*, 157 Tex.Cr.R. 206, 248 S.W.2d 124 (1952); *McIlveen v. State*, 559 S.W.2d 815, 819 (Tex.Cr.App. 1977) (reh. denied 1978).

Two jurors testified that they did not recall any juror's asserting during deliberations his personal knowledge of how quickly one could be killed by ligature strangulation. They did not state conclusively, however, that this did not happen.

Such testimony did not constitute refutation of juror Lupia's testimony that such a statement was made. In *Trevino v. State*, supra, one juror testified that another juror during deliberations asserted his personal knowledge to the effect that testimony by appellant therein tending to support a self–defense theory was untrue. The State called the jury foreman, who stated that he could not recall whether any juror made such an assertion. It was held that this did not constitute refutation of the first juror's testimony, and thus the assertion of jury misconduct "went uncontroverted by the State," 582 S.W.2d at 112. See also *Hart-man v. State*, 507 S.W.2d 557 (Tex.Cr.App. 1974), and cases cited therein. Similarly, juror Lupia's statement in the present case was not controverted.[2]

■ The facts of record previously recited show that this "other evidence" was detrimental to appellant. The expert testimony from the State's and appellant's witnesses was strongly in dispute over whether ligature strangulation, as alleged by the indictment, in fact had been a contributing cause of death. The State, bound by the grand jury's preliminary determination of the cause of death, had the burden to prove beyond a reasonable doubt that death indeed was caused by ligature strangulation, V.T.C.A., Penal Code, § 2.01.

Appellant orally admitted the killing to police and testified to the same effect at trial. He then attempted to establish a defense that the actual means of causing death were other than those alleged in the indictment. This of course was a question for the jury as triers of fact, Article 36.13, V.A.C.C.P.[3]

■ However, the fact issue thus presented must be resolved based only on the competent, sworn testimony received in open court, subject to the right of cross–examination by the opposing side. As was stated in *Rogers v. State*, 551 S.W.2d 369 (Tex.Cr.App. 1977), Article 40.03(7), V.A.C.C.P., "was designed by the Legislature to guarantee the integrity of the fundamental right to trial by jury by restricting the jury's consideration of evidence to that which is properly introduced during the trial." 551 S.W.2d at 370.

■ The state of the evidence on cause of death when the case went to the jury was as follows: the prosecution relied on Dr. Hollander's testimony that, at best, ligature strangulation was a contributing cause of death. Appellant's defense on cause of death was based on appellant's and Dr.

---

2. It is interesting to note that juror Moody, who could have foreclosed the issue by denying having made the statement, was not called to testify.

3. Although appellant also alleges on appeal insufficiency of the evidence of cause of death, we need not and do not reach that question.

Race's testimony that the ligature strangulation had had no causal connection with the death of the deceased. Had juror Moody been properly qualified as an expert in use of ligatures to cause death, rather than being sworn as a juror, perhaps his testimony would have been proper.[4] In the context of what actually did happen in the jury room, however, his statement was improper and detrimental to appellant.

The State's contention that appellant must show harm by the jury's receipt of this "other evidence" is without merit. Where the "other evidence" is shown to have been received by the jury and to have been detrimental to the defendant, this court "will not speculate on the probable effects on the jury or the question of injury," and the requirement for a new trial in such cases is considered a "per se rule." *Rogers*, supra.[5]

Accordingly, appellant's fourth ground of error is sustained. The judgment is reversed and the cause remanded.

---

4. We point out, however, that his statement, based on nothing more than military training received years before, was clearly at odds with the testimony of the medical experts on both sides.

5. We note parenthetically that juror Lupia's testimony though contradictory in places, shows on balance that her deliberations indeed were affected by the statement of juror Moody.