**Nerio M. TORRES, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–82–205–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 17, 1983.

Rehearing Denied Dec. 29, 1983.

Second Rehearing Denied Jan. 26, 1984.

Discretionary Review Granted
July 11, 1984.

J. Douglas Tinker, Tinker & Tor, Corpus Christi, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a conviction for the offense of delivery of marijuana of (200) pounds or less but more than 50 pounds. Art. 4476–15, § 4.05(c) of the Texas Controlled Substances Act, TEX.REV. CIV.STAT.ANN. (Vernon Supp.1982). Appellant Nerio M. Torres was indicted for knowingly and intentionally delivering "by actual transfer and constructive transfer to Johnny L. Whitley a quantity of marijuana of more than fifty (50) pounds but less than two hundred (200) pounds." Appellant entered a plea of "not guilty." A jury found appellant guilty and assessed punishment at ten years confinement in the Texas Department of Corrections.

Appellant brings forward thirteen grounds of error. We first address his third ground of error wherein he challenges the constitutionality of art. 4476–15, § 4.05(c) of the Texas Controlled Substances Act, as amended in 1981.

The Texas Legislature, in the 1981 session, passed House Bill 730,[1] which amended the Texas Controlled Substances Act, TEX.REV.CIV.STAT.ANN., art. 4476–15 (Vernon Supp.1982). The Court of Criminal Appeals has recently held in *Ex parte Crisp*, 661 S.W.2d 944 (Tex.Cr.App.1983); and, in *Bass v. State*, 661 S.W.2d 954 (Tex. Cr.App.1983), that the caption to House Bill 730, supra, was defective in that it failed to apprise readers of the changes in the Code of Criminal Procedure and Penal Code effectuated by the amendment. The Bill was declared unconstitutional under the Tex. Const. Art. III, § 36. The Court further held that the Controlled Substances Act stood as though House Bill 730 had never been enacted.

---

1. Controlled Substances—Offenses and Punishment, Ch. 268, 1981 Tex.Gen.Laws 696.

The pre-amendment version of the Texas Controlled Substances Act, in pertinent part, provided:

"(d) Except as otherwise provided by this Act, a person commits an offense if he knowingly or intentionally delivers marihuana.

(e) Except as provided in Subsection (f) of this section, an offense under Subsection (d) of this section is a felony of the third degree.

(f) An offense under Subsection (d) is a Class B misdemeanor if the actor delivers one-fourth ounce or less without receiving remuneration."

Art. 4476–15, § 4.05, Tex.Rev.Civ.Stat.Ann. (Vernon 1976). Tex. Penal Code Ann. § 12.34 (Vernon 1974), in pertinent part, provides:

"(a) An individual adjudged guilty of a felony of the third degree shall be punished by confinement in the Texas Department of Corrections for any term of not more than 10 years or less than 2 years."

The indictment in the instant case is sufficient to allege an offense under the law as it existed before H.B. 730 was passed. See *Crisp*, supra.

 In the case at bar, the charge given the jury at the punishment stage of appellant's trial reads:

"Our statute provides that the punishment for the offense of DELIVERY OF MARIHUANA OF 200 POUNDS OR LESS BUT MORE THAN 50 POUNDS shall be CONFINEMENT IN THE TEXAS DEPARTMENT OF CORRECTIONS FOR LIFE OR FOR A TERM OF NOT MORE THAN 99 years or less than 5 years, and a fine not to exceed $50,000."

The sentence imposed by the jury was "10 years confinement in the Texas Department of Corrections." Despite the fact that the statute, under which appellant was initially charged, has been subsequently held to be unconstitutional, no reversible error is shown since the penalty imposed on appellant was within the range provided for by the pre-amendment statute. See *Harvey v. State*, 515 S.W.2d 108 (Tex.Cr.

App.1974). We find that the charge given was neither calculated to injure the rights of appellant nor was appellant deprived of a fair and impartial trial. See *Jewell v. State*, 593 S.W.2d 314 (Tex.Cr.App.1978); *Sulak v. State*, 118 Tex.Cr.R. 112, 40 S.W.2d 157 (1931); and, *Grider v. State*, 82 Tex.Cr.R. 124, 198 S.W. 579 (1917). Appellant's third ground of error is overruled.

We now turn to appellant's sufficiency of the evidence assertions. The record reflects that, on October 19, 1981, appellant was contacted by Sheril Young (later identified as a confidential informant). As a result of this contact, a meeting was set up the following day between appellant, Young, and Officer Johnny Lynn Whitley, who was acting in an undercover capacity. At this meeting, appellant and Officer Whitley discussed the purchase of a large quantity of "commercial" marijuana. Officer Whitley testified that appellant agreed to deliver to Whitley any amount they wanted, at a price of one hundred and seventy-five dollars ($175) a pound. According to Officer Whitley, appellant gave him a phone number and told him "to call [appellant] at 8:00 that evening and he'd let [Whitley] know how much [marijuana] they had and we could work out a deal on it." Officer Whitley then went to the Sheriff's Office in Rockport, Texas, and picked up $40,000.00, in cash, to be used as purchase money for the marijuana. That night, when Officer Whitley called the number given him, he spoke with appellant and it was agreed that the parties would meet so that Officer Whitley could view a sample of the marijuana and show appellant the money. At this second meeting, appellant and another man (Mr. Morin) met with Officer Whitley and a second officer. The second officer (Officer Russell) showed appellant the money and Officer Whitley was shown a "baggie of marijuana." Mr. Morin told Officer Whitley that he could get approximately one hundred and fifty pounds of marijuana, and it was arranged that the delivery would take place in Rockport, Texas.

Whitley testified that, at 11:45 p.m. the same day, Mr. Morin called Officer Whitley at a motel room in Rockport, Texas, and another meeting was set up in a parking lot. When Officers Whitley and Russell arrived, they observed two vehicles, a blue van and a green Thunderbird. Appellant and Mr. Morin were standing outside of the blue van. Officer Whitley approached the two men and asked to see the marijuana. The green Thunderbird was moved near Officer Whitley's car and Mr. Morin took Officer Whitley over to it. Appellant and Officer Russell remained by the car in which Officers Whitley and Russell had arrived. In the trunk of the Thunderbird were bags of marijuana.

Officer Russell testified that appellant explained to him that they only had a hundred pounds but that he would have the rest of it the next day. Mr. Morin and Officer Whitley walked over to Whitley's car for the money. Officer Whitley gave a prearranged signal, and shortly thereafter, other law enforcement officers moved in and arrested appellant and Morin.

■ Appellant asserts in his first ground of error that the evidence was insufficient to show a delivery by appellant to Officer Whitley of the marijuana. The jury was charged with finding delivery, through actual or constructive transfer. Constructive transfer "contemplates that the transferor is at least aware of the existence of the ultimate transferee before he may be said to have delivered or made a delivery of a controlled substance to another through a third person." *Sheffield v. State*, 623 S.W.2d 403 (Tex.Cr.App.1981); *Gonzalez v. State*, 588 S.W.2d 574 (Tex.Cr.App.1979). It is appellant's contention that no transfer of the marijuana took place since the marijuana was never physically placed in Officer Whitley's possession; hence, there could be no delivery.

The State contends the "constructive transfer" does not require the actual placing of a substance in the physical possession of another, instead, it can be established simply by making the substance available either by placing it in the pres-

ence of an agent or by affording him access to the substance. While we are not inclined to define "constructive transfer" as liberally as the state requests, we do find that, under the facts present in the case at bar, a constructive transfer did occur. The "constructive" part of the transfer should not be limited to just the identity of the parties making the transfer itself. A "constructive transfer" should include a transfer where the parties have taken all the steps necessary to place the goods at the disposal of the transferee; however, due to the nature of the goods, an actual manual delivery is impractical under the circumstances. See *Fox v. Young*, 91 S.W.2d 857 (Tex.Civ.App.—El Paso 1936, no writ).

■ Here, arrangements were made between the parties for Officer Whitley to return to his hotel room in Rockport, Texas, where he was to receive a call concerning the delivery of the marijuana. He received the phone call and was told to proceed to a parking lot in Rockport. Once there, he was shown bags of marijuana in the trunk of a car. Testimony establishes that the car contained fourteen bags, of assorted sizes, containing marijuana. The combined weight of the bags was one hundred and three pounds. After viewing the bags, Mr. Morin and appellant attempted to collect the money for the marijuana from Officer Whitley. At this time, they were arrested. We find the facts sufficient to establish a constructive transfer. We further find the evidence sufficient to establish that appellant was the transferor. See *Villarreal v. State*, 617 S.W.2d 702 (Tex. Cr.App.1981). Appellant's first ground of error is overruled.

■ Appellant asserts in his second ground of error that the evidence is insufficient to prove that the quantity of marijuana in question was more than fifty pounds but less than two hundred pounds. It was established at trial that fourteen bags of marijuana were confiscated during appellant's arrest, these bags having a combined weight of 103 pounds. Officer Whitley testified that, while he did not personally in-

spect the contents of each bag, those he did inspect contained marijuana. Whitley further testified that, in ascertaining the weight of the marijuana involved, he counted "seeds, stems, stalks and everything."

Jimmy Tijerina testified that he had bagged "a hundred and one" pounds of marijuana and placed it in the trunk of his car. He further testified that he inspected the marijuana when he was bagging it, and, "About forty percent of it was real good; the rest of it wasn't good at all .... Most of it were (sic) stems and seeds and dirt weeds ...." Concerning the forty percent he testified was good, he stated: "It could be more, it could be less. I don't know for sure." This is the same marijuana confiscated during appellant's arrest.

The defendant has the burden of establishing that the marijuana he possessed contained certain materials that should have been excluded in determining its proper weight. *Elkins v. State*, 543 S.W.2d 648 (Tex.Cr.App.1976); *Doggett v. State*, 530 S.W.2d 552 (Tex.Cr.App.1975). Here, the jury was properly charged on the definition of marijuana and the evidence is sufficient to support its determination that the marijuana in question weighed between fifty and two hundred pounds. Appellant's second ground of error is overruled.

■ Appellant, in his fourth, fifth and sixth grounds of error, attacks the sufficiency of the instruction on entrapment given the jury. In the fourth and fifth grounds of error, he alleges error due to the failure of the trial court to submit requested instructions on entrapment. In the sixth ground of error, he contends that the trial court failed to properly submit an objective charge on entrapment. The following instructions on entrapment were given the jury:

"You are instructed that it is a defense to prosecution that the actor engaged in the conduct charged because he was induced to so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense; however, conduct merely affording a per-

son an opportunity to commit an offense does not constitute entrapment.

You are further instructed that the term "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents. Therefore, even if you find and believe from the evidence beyond a reasonable doubt that the Defendant, NERIO M. TORRES, committed the offense of delivery of marihuana, but if you further believe, or you have a reasonable doubt thereof, that he was induced to do so by Sheril Young, who was a law enforcement agent, to-wit: an informant acting for and assisting police agents on a continuing basis in obtaining information for drug offense arrests, and who used persuasion or other means likely to cause persons to commit the offense, to-wit: a promise of money; and that the conduct of said Sheril Young did not merely afford the Defendant an opportunity to commit the offense, if any, you will find the Defendant not guilty."

Appellant's Requested Instruction Number 1 attempts to delve into the reasons why Young acted as an agent for the state. It asked the jury, in reaching its determination on the issue of entrapment, to consider whether Young acted as he did for the purpose of securing favorable treatment with regard to criminal charges pending against him or for money to further his drug habit. Appellant's Requested Instruction Number 3 states:

"You are instructed that while it is proper that law enforcement officers should diligently seek to ferret out crimes and violations of the law, the State cannot solicit and then encourage an individual to commit a crime and later seek to punish that individual for that offense. This does not imply that police informers will have free rein to commit crimes while working for the police. An informer will not have a license to commit a crime or work with known criminals other than those he is investigating pursuant to direct instructions from the police."

Appellant's Requested Instructions seek to place at issue factors not relevant to a defense of entrapment. Accordingly, it was not error for the trial court to refuse to instruct the jury as requested.

■ Appellant correctly points out that an objective rather than subjective test is proper for an entrapment defense. *Benavidez v. State,* 652 S.W.2d 486 (Tex.App.— Corpus Christi 1983, no pet.); See *Bush v. State,* 611 S.W.2d 428 (Tex.Cr.App.1981). Under an objective test, "[t]he defendant's criminal disposition is immaterial .... [O]nce the inducement element is established the trial court need consider only whether the methods of persuasion used were likely to induce persons not ready and willing to commit the crime to engage in the conduct charged." *Bush,* supra at 430. The charge given by the trial court properly charges the jury on the defense of entrapment. Furthermore, the trial court did not err in refusing to give appellant's requested instructions on entrapment. Appellant's fourth, fifth and sixth grounds of error are overruled.

Appellant asserts in his seventh ground of error that the State failed to disprove the defense of entrapment beyond a reasonable doubt, and therefore, the evidence is insufficient to support the conviction. Concerning the details of his inducement, appellant testified:

"Q Why did you ever consider getting into it at that stage?

A At that time I was pretty broke. I was, like I said, I didn't have electricity at my house. I just barely had it turned on and I was three months behind and I'd had enough to pay for the deposit and I was still about three months behind on the house and ready to get the eviction notice.

Q So, you took a chance?

A Yes, I decided to take the chance. I never intended to really get into the drug deal myself. I thought I would find somebody who did have it.

\* \* \* \* \* \*

A ... we walked to the other side of the parking lot where Russell was in an El Camino pickup, I think, and we walked over and he had the window rolled up and the doors locked, I assumed that, it looked like that, and he turned on the inside light and the suitcase was full of money.

\* \* \* \* \* \*

A I have never seen that much money in my whole life, that belonged to me, anyway.

Q What did you do next?

A I just stood there and looked at it and I thought if I could have some of that money it would be the end of my problems."

■ Appellant's testimony, set out above, supports a showing that appellant was merely furnished an opportunity to participate in the commission of an offense. See *McKelva v. State,* 453 S.W.2d 298 (Tex. Cr.App.1970). While appellant does testify that it was at the police informant's request that he became involved in the events that subsequently led to his arrest, he has failed to establish that entrapment occured. See *Bush,* supra, Opinion on State's Motion for Rehearing, at 432. Appellant's seventh ground of error is overruled. Appellant's eighth ground of error, that the trial court erred in failing to instruct a verdict of not guilty because appellant was entrapped as matter of law, is also overruled.

■ In his ninth ground of error, appellant complains that the trial court erred in failing to admit before the jury the offered testimony of Officer Russell concerning his relationship with the informant Young. It is appellant's contention that this testimony would be proper to show Young's motive "to initiate a delivery of marijuana with Appellant." Since Young was not called to testify, his credibility, bias or prejudice was not at issue and, therefore, examination of Officer Russell as to his relationship with Young would have been irrelevant. *Lopez v. State,* 574 S.W.2d 563 (Tex.Cr.App.1978); see *United States v. Ramirez,* 533 F.2d 138 (5th Cir.1976, cert. denied 429 U.S. 884, 97 S.Ct. 235, 50 L.Ed.2d 165).

Appellant further contends that the failure to allow the requested testimony of Russell relating to his relationship with Young prevented him from obtaining correct instructions on entrapment. We find no merit to this contention. Appellant's ninth ground of error is overruled.

Appellant, in his tenth ground of error, says that jury misconduct occurred in that the jury discussed and considered evidence outside the record. At the hearing on Motion for New Trial, nine jurors were questioned as to this issue. Juror Betty Berry testified that during jury deliberations, a juror, whom she believed to be Mrs. McFadin, stated that "she lived in Kansas [where] marijuana grew wild in your garden and flower beds and you pulled it up and threw it away." Berry testified further that the juror "indicated that we would count all [marijuana] except the main stalk that grew out of the ground," in arriving at the total weight involved. When asked if that was just the juror's opinion, Berry stated "I think that was everyone's personal opinion." Berry later stated, "That's what I understood her to mean, that it was all good except for that one big stalk;" and still later, "she didn't say it was 'my personal opinion.' We were just all volunteering our thoughts, I guess."

Juror Alda Pena, in connection with questioning about someone telling the jury what should or should not be considered as marijuana, testified:

"Q Did you hear anyone talking about their own personal experiences as far as marijuana is concerned during the jury deliberations?

A Personal experience, no.

Q I'm not talking about using marijuana. Do you have a recollection of a person who indicated that she was in Kansas?

A Yes, in a way I remember.

Q Do you have a recollection of her discussing what little she might have in regard to marijuana?

A She said something about it, but I don't remember too much.

Q Did it have to do with how you went about deciding how much it weighed?

A Yes."

Juror Jane Rossman, when asked if she followed the statement concerning the weight of the marijuana made by the lady who said she was in Kansas, stated: "We followed the Court's instructions." She also testified:

"Q (By Mr. Tinker) Mrs. Rossman, please understand as I'm asking questions I want to know what went on in the jury room, okay? The lady from Kansas is the only one that expressed to the other members of the jury panel any particular expertise with regard to marijuana and what you did consider and did not consider?

A We were going over the definition as it was given to us, and someone said, 'How does marijuana grow?' And she said, 'I've seen it grow in Kansas.' That was about all that she said.

Q Did she tell you anything about what part of the marijuana could be used as far as her experience was concerned?

A No, she did not.

Q Is it your testimony that she never mentioned whether or not the stalks should be considered in the weight of the marijuana?

A No, she did not."

Juror Barbara Smith testified that she remembered a comment being made about "having been from Kansas," but she couldn't remember whether it had been made in the jury room, after they had left the jury room, or during general questioning. Smith later stated: "Some lady, I think, said she had seen marijuana grow."

Juror James Andrews testified that while he remembered a comment about "someone having seen marijuana grow wild," it did not affect him.

Juror Leona Sharp testified that she remembered a woman mentioning having "seen marijuana growing wild," but that she didn't pay any attention to the statement. According to Sharp, the woman

mentioned her experience with marijuana while they were looking at the marijuana.

Juror Katheryn McFadin, who testified that she had never been to Kansas, stated: "A Well, we were talking about the stalks of the marijuana and we was (sic) talking about the little branches that goes off of the stalk and she said that them (sic) stalks that was (sic) in there wasn't (sic) the big stalks that went up in the center of the stalk because it grows wild in Kansas and that's what it looks like.

Q And that's all she said?

A That's all she said."

However, McFadin, when asked if the lady described what "big stalks" were later stated:

"A Yes, sir, she talked about the big stalks and we took it apart and there wasn't any in it.

Q Based upon what she told you the big stalks ought to look like?

A Yes.

Q All right. Once she told you what the big stalk was supposed to look like, based on her personal experience, you figured there weren't any?

A Uh-huh.

Q And that's what you used in deciding if there were more than fifty pounds or less than fifty pounds, in deciding the guilt of Mr. Torres?

A Yes."

When questioned about what the lady from Kansas had stated Juror Lonie Rheinlaender stated: "She said that she had seen it grow in Kansas and wondered how much the stems would weigh or how much the tops would weigh and it was just a passing statement."

Juror Venus Watkins, when asked about some person talking about their own personal experience in Kansas with marijuana, stated: "Well, she just said, if you cut the marijuana off the stalk it keeps growing and if you keep cutting it, it keeps growing."

▆▆ In order to mandate a new trial because of other evidence received after the jury has retired, it must be established that the evidence was in fact received and that it is detrimental to the defendant. *Hunt v. State*, 603 S.W.2d 865 (Tex.Cr.App. 1980); *Trevino v. State*, 582 S.W.2d 111 (Tex.Cr.App.1979). If there is conflicting evidence on the issue of whether the jury received the evidence, a fact question is presented, and the trial court's determination of the question will not be overturned on appeal unless an abuse of discretion is shown. *Hunt*, at 868.

The jurors all testified to having heard some remark about a lady being from Kansas. However, most of the jurors testified to the effect that they weren't really sure, or didn't remember, much of what the juror had said. Juror Rossman emphatically stated that the lady had not told her anything about what part of the marijuana could be used and had not mentioned whether or not the stalks should be considered in the weight of the marijuana. Juror Rheinlaender stated that the lady had only made a passing remark. Finally, Juror Berry stated, "We were just all volunteering our thoughts, I guess."

▆▆ A passing remark of the mere mention of something by a juror, even if that something constitutes "other evidence," will not be enough to mandate a new trial. See *Nacol v. State*, 590 S.W.2d 481 (Tex.Cr.App.1979); *Zuniga v. State*, 635 S.W.2d 780 (Tex.App.—Corpus Christi 1982, pet. ref'd.). Further, since there exists a conflict as to whether the detrimental "other evidence," if any, was actually received, and since we find no abuse of discretion, we are bound by the trial court's determination that it was not. Appellant's tenth ground of error is overruled.

Appellant, in his eleventh ground of error, asserts that there was jury misconduct because the jurors conducted experiments during deliberations which amounted to the reception of other evidence: i.e., they examined some of the marijuana in the jury room while deliberating. Juror Rossman testified that she opened the bag of marijuana and looked at it. Juror Smith testi-

fied that, with regard to the marijuana in the sack, she "looked at it and stripped it and pulled it apart and messed around with it and sorted it out a little bit."

The jury may take with them into deliberation any exhibits admitted as evidence. *Lopez v. State*, 628 S.W.2d 82 (Tex.Cr.App.1982). Unless it is made to appear that the articles which are in evidence, and taken into the jury room, were used by the jury in any different manner than accorded with the testimony, or that some new fact hurtful to appellant was thereby discovered, examination of an exhibit will not result in jury misconduct. *Smith v. State*, 90 Tex.Cr.R. 24, 232 S.W. 497 (1921). The examination by the jurors of the marijuana admitted into evidence at trial did not constitute juror misconduct. Appellant's eleventh ground of error is overruled.

In the thirteenth ground of error, appellant complains of jury misconduct because of discussion of parole law by the jury. The test for determining whether or not jury misconduct occurred with regard to jury discussion of parole laws is that first, the defendant must show that a discussion of the parole law took place during the jury deliberations and second, he must show that the discussion denied him a fair and impartial trial. *Munroe v. State*, 637 S.W.2d 475 (Tex.Cr.App.1982). Not every mention of parole law requires reversal, rather, the reviewing court must first ascertain whether the discussion denied appellant a fair and impartial trial. *Munroe*, at 477; *Zuniga*, supra, *at 782*.

Juror Watkins testified that she remembered somebody saying that, "if we gave him this many years he would be out in a few." She was unsure whether this remark was before or after the jury had agreed upon a sentence. She stated "[The statement] was made and we kind of discussed it." Watkins testified she followed the instruction not to consider parole laws. Juror Pena testified that she did not remember a conversation in which "anyone during the jury deliberations [told] the jur-

ors whether or not if he [appellant] got ten years he would really have to serve all the ten years." Appellant has shown no more than a casual reference to the parole laws: of the two jurors who testified concerning the issue, one did not even remember the conversation. Nothing was shown as to the detrimental effect of the remark. Appellant's thirteenth ground of error is overruled. See *Diaz v. State*, 660 S.W.2d 93 (Tex.Cr.App.1983).

Finally, appellant, in his twelfth ground of error, contends that a new trial should have been granted because the state broke an agreement between it and appellant's trial counsel. We find this assertion to be unsupported by the record. Appellant's trial counsel testified at the Motion for New Trial that it was his understanding that if he did not mention at anytime during the trial that the co-defendants had received probation and paid fines in the case, the State would not recommend a specific term of years and, while not recommending probation, would not do anything to keep appellant from getting probation. Trial counsel felt that the State breached this agreement through comments like, "You are going to look these officers in the face and this community and the school children. What are you going to do about a man who sells a hundred pounds of marijuana? How are you going to go out there and talk to the community and tell them what you did to a man that sells a hundred pounds of marijuana in your community?" The State also advised the jury as to the range of punishment.

While the terms of agreement are nebulous at best, even if we were to find them true and binding upon the prosecution, we would have to conclude from the record that they were not breached by the state. Appellant's twelfth ground of error is overruled.

The judgment of the trial court is AFFIRMED.

## ON MOTION FOR REHEARING

Appellant contends that this Court erred in affirming the judgment of the trial court

in spite of the fact that the jury was allowed to assess punishment under a statute which, along with its applicable range of punishment, has been held to be unconstitutional. In support of his argument appellant relies on *Moss v. State*, 574 S.W.2d 542 (Tex.Cr.App.1978); he argues that by affirming the lower court's judgment we have engaged in speculation on the punishment that the jury would have assessed had it been properly charged. We have reviewed *Moss* and find it distinguishable from the facts before us today.

In *Moss*, the Court of Criminal Appeals re-examined its ruling in *Jones v. State*, 532 S.W.2d 596 (Tex.Cr.App.1976), and found it to be erroneous. Both *Jones* and *Moss* involved convictions for burglary of a residence, however, the Court determined that the evidence was only sufficient to support a conviction for the lesser included offense of burglary of a building. The Court in *Moss*, further determined that it would be improper to assume, "that the same jury would assess the same punishment for burglary of a building as it assessed for burglary of a residence...."

In the case before us today we have found the evidence sufficient to support the conviction for offense as alleged in the indictment; i.e., delivery of marijuana of more than fifty but less than two hundred pounds. We reiterate that this indictment alleged an offense under the pre-amended Act. Furthermore, under the pre-amended version an indictment would have been sufficient had it merely alleged delivery of more than one-fourth ounce of marijuana. The jury assessed punishment based upon its finding that appellant had in fact delivered between fifty and two hundred pounds of marijuana. Unlike in *Jones* and *Moss*, here both the evidence and the indictment support the jury's conviction of appellant. While we may not speculate on what sentence a jury will impose for an offense, in the case at bar we know exactly what sentence the jury intended to impose and did impose. The jury imposed neither the maximum nor the minimum punishment authorized by the charge. Instead, it weighed the evidence and arrived at an

appropriate sentence for the offense appellant was shown to have committed. As that sentence was within the allowable range of punishment under the pre-amended version, we find no reversible error. *See Harvey* and *Sulak*. (cited in our original opinion). *See also Doucette v. State*, 166 Tex.Cr.R. 596, 317 S.W.2d 200 (1958).

Appellant's Motion for Rehearing is Denied. The judgment of the trial court is AFFIRMED.