HACKETT V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-112-CR

JERRY MICHAEL HACKETT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Jerry Michael Hackett appeals from his conviction for driving while intoxicated.  Appellant pled not guilty, a jury found him guilty, and the trial court fined him $500 and sentenced him to 180 days’ confinement.  The trial court suspended Appellant’s sentence and placed him on twenty-four months’ community supervision.  On appeal, Appellant requests a new trial, contending that the trial court erred by allowing the jury to receive evidence not admitted at trial and that it abused its discretion in admitting the testimony of a particular police officer.  We affirm.

On September 9, 2000, Officer Don Turbeville was patrolling Interstate 35-W in Denton County.  He was running stationary radar while parked in his patrol car in the median of the highway.  At approximately 2:50 a.m., his radar detected Appellant’s red 1999 Ford Taurus traveling eighty-two miles per hour in a sixty-five-mile-per-hour zone.  Appellant also was weaving in and out of traffic and failing to maintain a single lane.  Appellant slammed on his brakes and lost control of his car, which cut across the median and made a full 360-degree circle.

Officer Turbeville approached Appellant and made sure Appellant was not injured.  He asked Appellant if he had consumed any alcohol, and Appellant said that he had drunk some beer.  Once Officer Turbeville discovered that Appellant had been drinking, he administered several standardized field sobriety tests to Appellant.  Officer Turbeville first conducted the Horizontal Gaze Nystagmus (HGN) test.  Officer Turbeville found that Appellant exhibited six out of six clues as to intoxication.  Officer Turbeville conducted the walk-and-turn test, in which Appellant exhibited three clues, unsuccessfully completing the test.  Next, Appellant performed the one-legged stand test, in which he exhibited three out of four clues.  Officer Turbeville’s video camera-equipped patrol car
 documented Appellant on videotape as he took the standardized field sobriety tests and as he was arrested.

At trial, the trial court held a rule 702 expert witness hearing outside the jury’s presence specifically as to Officer Turbeville’s qualifications for testifying regarding the HGN test.
(footnote: 2)  The trial court found that the evidence satisfied rule 702 and 
Kelly v. State, 
824 S.W.2d 568, 573 (Tex. Crim. App. 1992).
(footnote: 3)
 During trial, the State entered into evidence as State’s Exhibit 1
 the videotape of Appellant’s stop and arrest
 and entered a videotape of Appellant’s detention in a Denton County Jail intoxilyzer room as State’s Exhibit 3.  The videotapes, which were not accompanied by audio, were shown to the jury in the courtroom during trial.  The jury also took the tapes and reviewed them during deliberations.

While the jury was deliberating, defense counsel learned that the videotapes contained additional footage of offenses of persons other than Appellant.  The footage before Appellant’s footage on Exhibit 1 included stops of a red car, a pickup truck, a white sports utility vehicle, a red Ford Explorer, and a Toyota car, all on different dates than Appellant’s arrest.  Immediately preceding Appellant’s footage, Exhibit 1 also contained footage of an arrest of a man driving a green car on the same date as Appellant’s arrest.  Each separate traffic stop was prominently marked with a date in the top left-hand corner of the screen.

 State’s Exhibit 3 contained separate footage of two suspects being detained in intoxylizer rooms.  Footage of Appellant—a Caucasian male— appeared first; footage of another defendant—an African-American male— appeared second.  When defense counsel informed the trial court that the videotapes contained other footage of stops and arrests, the trial court brought the jury into the courtroom to ensure that the jury was not watching the entire contents of the videotapes.  After determining that the jury had just viewed the videotapes in their entirety, the trial court instructed the jury as follows:

I’m going to instruct you to not consider any of those -- if you did view any of those other offenses, not consider those in this case.  And we had the one that is to be considered, you’ve seen it, and it’s all on one day.  Those others are on a different day.  So I’m instructing you to only consider the offense that has to do with this case.

After the jury delivered its verdict, Appellant’s counsel requested that the trial court make a record on whether the jury considered the other offenses and whether it affected any jurors.  The trial court refused to do so.  

In his first point, Appellant contends that the trial court erred when it allowed the jury to view the videotapes containing other detentions and arrests by Officer Turbeville.  We disagree.

Under appellate rule 21.3, a defendant must be granted a new trial when “after retiring to deliberate, the jury has received other evidence.”
  Tex. R. App. P.
 21.3(f).  For an appellate court to mandate a new trial because the jury received other evidence during deliberations, the appellant must satisfy the following two-prong test:  (1) the evidence must have been received by the jury; and (2) it must be detrimental or adverse to the appellant.  
Garza v. State, 
630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981);
 Woodall v. State,
 77 S.W.3d 388, 392 (Tex. App.—Fort Worth 2002, pet. ref’d).  The appellant has the burden of proof to establish the two-prong test.  
Garza
, 630 S.W.2d at 274.  The controlling factor in determining whether the appellant has met the second prong is the character of the evidence, in light of the issues before the jury, and not the effect of such evidence on the jurors.  
Id
. (holding that the appellant should have received a new trial where appellant’s prior criminal record was not discussed at trial, and a juror introduced statements of fact outside the record into the jury's deliberations that appellant had a bad criminal record, that he had killed a man and was a murderer, and that such statements were detrimental to the appellant).
(footnote: 4) 
 Whether the jurors received new and detrimental evidence during their deliberations is a fact issue to be decided by the trial court, and it is a question of degree.  
Guice v. State,
 900 S.W.2d 387, 389 (Tex. App.—Texarkana 1995, pet. ref’d);
 Martinez v. State,
 846 S.W.2d 348, 350 (Tex. App.—Corpus Christi 1992, pet. ref'd).  A reviewing court will not overturn the trial court's decision absent an abuse of discretion.  
Guice,
 900 S.W.2d at 389
.

Because the State concedes that the jury received the evidence, Appellant meets the first prong of 
Garza
.  
See Garza,
 630 S.W.2d at 274
.  As to the second prong, we review the evidence in light of the issue before the jury, which 
was whether Appellant had committed the offense of driving while intoxicated.  
See id.
  A person commits the offense of DWI if he operates a motor vehicle in a public place while intoxicated.  
Tex. Penal Code Ann. 
§ 49.04(a) (Vernon 2003).  

Our review of the record reveals that the date of the offense—September 9, 2000—was mentioned to the jury fifteen times during trial.  This date was displayed in the upper left-hand corner of the video monitor during playback of the videotapes.  The jury viewed the portions of the videotapes relevant only to Appellant in open court during the trial with narrative provided by Officer Turbeville.  State’s Exhibit 1 contains footage of only one Ford Taurus like Appellant’s and contains footage of only one accident scene.  State’s Exhibit 3 contains footage of only two defendants, one of which was an African-American male and the other of which was Appellant, a Caucasian male whom Officer Turbeville identified at trial.  None of the extra footage in any way implicated or had anything to do with Appellant. 

Nevertheless, Appellant argues that the evidence was detrimental to him.  Appellant argues that the extra footage confused the prosecutor
(footnote: 5) and the jurors.  Appellant further argues that the other evidence would have provided the jury with points of comparison between Appellant and the other drivers that it was not entitled to make.  These arguments, however, go to the effect of the evidence on the jury, not the character of the evidence in light of the issue before the jury.  
See Garza
,
 
630 S.W.2d at 274.
 

We hold that the trial court did not abuse its discretion in not hearing whether the evidence affected the jurors, because, in light of the issue before the jury, the character of the other videotape footage was not adverse or detrimental to Appellant.  
See id.
  Unlike the cases cited above, none of the footage of other stops and arrests inadvertently submitted to the jury applied to or implicated Appellant in any way.  In addition, the trial court instructed the jury to disregard the extra evidence, reminding the jurors that they had seen the proper portions of the tapes in the courtroom and that the portions were date marked.  We presume the jury followed the trial court's instruction to disregard.  
Wesbrook v. State,
 29 S.W.3d 103, 116 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  We hold that Appellant has not proven that the extra videotape footage was detrimental to him, and we overrule his first point.

Appellant contends in his second point that the trial court abused its discretion in determining that the evidence of Officer Turbeville’s qualifications to conduct an HGN test satisfied the requirements of 
Emerson v. State,
 880 S.W.2d 759 (Tex. Crim. App.), 
cert. denied, 
513 U.S. 931 (1994).
(footnote: 6)  We disagree. 

We disagree with the State that Appellant did not preserve error as to this complaint.  Appellant requested and received a rule 702 hearing where the trial court heard evidence and ruled that Officer Turbeville’s testimony was admissible.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  
Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Taylor v. State
, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996).  If a trial court hears objections to proffered evidence outside the jury’s presence and rules that the evidence is admissible, the objections are deemed to apply to the evidence when it is admitted before the jury without the necessity of repeating the objections.  
Tex. R. Evid.
 103(a)(1); 
Ethington
 
v. State
, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991).  Here, the trial court heard the evidence at the rule 702 hearing and ruled that it was admissible.  Appellant has preserved this point for our review.

We review a trial court’s ruling to admit or exclude evidence under an abuse of discretion standard.  
Rankin v. State,
 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh’g); 
Montgomery v. State,
 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  If the court’s decision falls outside the “zone of reasonable disagreement,” it has abused its discretion.  
Rankin
, 974 S.W.2d at 718; 
Montgomery,
 810 S.W.2d at 391.  For a witness' expert testimony to be admissible under rule 702, the witness must qualify as an expert by “knowledge, skill, experience, training, or education.”  
Tex. R. Evid.
 702.  Whether a particular witness qualifies as an expert is a decision to be made by the trial judge, and the judge has broad discretion in this area.
  Sterling v. State, 
800 S.W.2d 513, 521 (Tex. Crim. App. 1990), 
cert. denied,
 501 U.S. 1213 (1991); 
Kerr v. State, 
921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.).  A trial court's decision in this area will not be disturbed absent a clear showing of abuse.  
Sterling,
 800 S.W.2d at 521.

Emerson
 was the first case to discuss the HGN test and approve it for admission into evidence.  880 S.W.2d at 768.  
In that case, the court of criminal appeals concluded that the theory underlying the HGN test and the technique employed in administering it were both sufficiently reliable to allow the test to be admissible under rule 702.  
Id. 
 In each individual case, however, the State still must show by expert testimony that the test was properly administered.  
See id.
 at 769.  
Emerson
 clearly stated:

For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique.  In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN.

Id. 
 This court does not, however, interpret the quoted portion of 
Emerson
 to require that an expert must be certified by the State of Texas before his testimony on the subject of an HGN test will be admissible.  
Kerr, 
921 S.W.2d  at 502.

In this case, the trial court admitted Officer Turbeville’s testimony after he testified that he was a certified practitioner of the HGN, having been certified in 1998 after attending a three-day course and conducting some practice tests on test subjects.  Officer Turbeville also testified that he had experience in administering the test, and 
that at the time of trial, he was administering the test about once or twice weekly.  Officer Turbeville further testified as to the HGN test technique and stated that the test determines if a suspect’s eyes pursue an object smoothly or jerkily, which indicates whether a suspect has consumed alcohol.  The officer also indicated the proper method of conducting the HGN test and that he had applied it properly on the date he arrested Appellant.

Based on Officer Turbeville’s testimony, we hold that the trial court’s decision to admit the testimony was not outside the zone of reasonable disagreement; therefore, the trial court did not abuse its discretion in admitting Officer Turbeville’s testimony or in admitting the results of the HGN test he administered.  
See Emerson, 
880 S.W.2d at 769; 
Rankin, 
974 S.W.2d at 718; 
Montgomery,
 810 S.W.2d at 391.  We overrule Appellant’s second point.

Having overruled both of Appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: August 7, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Rule 702 provides that “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.”  
Tex. R. Evid. 
702.

3:
Kelly
 provides that for evidence derived from a scientific theory to be considered reliable, the evidence must satisfy three criteria in any particular case:  (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question.  
Id.
 at 573.  Under rule 702, all three criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted. 
 Id.

4:
The following are additional instances in which new matters were injected for the first time during jury deliberations and were found to be detrimental to the accused:  
Bearden v. State, 
648 S.W.2d 688, 692 (Tex. Crim. App. 1983) (a juror commented on the alcohol service policies of a nightclub the defendant attended); 
Alexander v. State, 
610 S.W.2d 750, 751 (Tex. Crim. App. [Panel Op.] 1980) (a juror stated during deliberations that he knew the accused and that “his character was bad”); 
Hunt v. State,
 603 S.W.2d 865, 868-69 (Tex. Crim. App. [Panel Op.] 1980) (a juror speculated on details of murder based on his Marine Corps training); 
Carroll v. State,
 990 S.W.2d 761, 762-63 (Tex. App.—Austin 1999, no pet.) (the jury’s receipt of mug shot of the accused when the mug shot was not connected with the cause before it).

5:
We further reject this argument because even if the prosecutor’s statement could be construed to mean that she had difficulty in watching the tape and discerning which arrest was that of Appellant, the jury was not in the same position as the prosecutor when viewing the tapes because it had already had an opportunity to view the correct portions of the tapes in open court.

6:
Appellant does not challenge the trial court’s finding that Officer Turbeville met 
Kelly v. State
.  824 S.W.2d at 573.