**Amado Hector SAENZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–86–0025–CR.**

Court of Appeals of Texas,
Tyler.

April 30, 1987.

Rehearing Denied June 23, 1987.

William M. House, Jr., Palestine, for appellant.

Richard Handorf, Dist. Atty., Palestine, for appellee.

SUMMERS, Chief Justice.

Appellant Amado Hector Saenz, Jr., was convicted by a jury of aggravated delivery of marihuana. The jury assessed punishment at six years' confinement. We reverse and remand.

In August of 1985, Deputy Sheriff Ricky Hillin of Panola County called Saenz for the purpose of purchasing a large quantity of marihuana. On September 21, 1985, after several calls and personal visits, Hillin and State Trooper James Cooke[1] of the Department of Public Safety reached an agreement with Saenz whereby Saenz would go to Laredo, Texas, and arrange for over fifty pounds of marihuana to be brought to Anderson County and sold to Hillin and Cooke. Hillin and Cooke agreed to pay Saenz $6,500 for arranging the purchase and gave him $1,000 "upfront money" to secure the deal.[2] At approximately

8:30 p.m. on October 5, 1985, Saenz called Hillin and said he had the marihuana. Around 11:00 p.m. that same night, Hillin and Cooke met Saenz and a man identified as Garcia at Saenz's home. At this time, Hillin and Cooke were shown a one pound package of marihuana and told that the rest[3] was located outside of town. The four of them then drove to a residence in Anderson County where they met an unidentified man. Afterwards Saenz, Garcia, Hillin, and Cooke loaded over seventy one-pound packages of marihuana into Hillin and Cooke's automobile, and at 12:30 a.m., Hillin and Cooke arrested Saenz for delivery of marihuana.

In his sole point of error, Saenz contends that the evidence is insufficient to support the jury's guilty verdict. At trial, Saenz admitted that he had arranged for the marihuana to be brought to Anderson County and was present when it was delivered to Hillin and Cooke.[4] He is complaining only of the sufficiency of the evidence to support the State's proof as to the amount of marihuana involved. Tex.Rev.Civ.Stat. Ann. art. 4476–15 § 4.05 (Vernon Supp. 1987) provides in part:

(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally delivers marihuana.

. . . .

(c) A person commits an aggravated offense if the person commits an offense under Subsection (a) of this section and the amount of marihuana delivered is more than 50 pounds.

(d) An offense under Subsection (c) of this section is:

(1) punishable by confinement in the Texas Department of Corrections for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed $50,000, if the amount of marihuana delivered is *200 pounds or less*

---

1. Hillin and Cooke were both acting as undercover officers.

2. Hillin and Cooke subsequently "wired" Saenz an additional $300 while Saenz was in Laredo to secure the deal.

3. Saenz represented to Hillin and Cooke that he had arranged for the sale of eighty-one pounds of marihuana to them at $650 per pound.

4. At trial, Saenz based his defense on the theory of entrapment. This question, however, is not before us on appeal.

*but more than 50 pounds;* (Emphasis ours.)

 At trial, Michael Glen Johnson, a chemist firearms examiner for the Texas Department of Public Safety, testified that the marihuana seized weighed 78.9 pounds.[5] On cross-examination, Johnson admitted that each bag of marihuana contained stems and seed and that he could not give a "good estimate" of the weight of the marihuana without the seeds and stems.[6] Saenz contends that since the definition of marihuana,[7] specifically excludes the mature stalks of the plant and sterilized seeds of the plant which are incapable of germination, there is no evidence as to the amount of marihuana delivered. Sanez has the burden of going forward with evidence to establish his defensive plea that the marihuana he delivered contained certain materials that should have been excluded in determining its proper weight. *Elkins v. State,* 543 S.W.2d 648, 649 (Tex.Cr.App. 1976); *Doggett v. Stat,* 530 S.W.2d 552, 555 (Tex.Cr.App.1975); *Getters v. State,* 170 Tex.Cr.R. 331, 340 S.W.2d 806, 808 (1960);

*Torres v. State,* 667 S.W.2d 190, 195 (Tex. App.—Corpus Christi 1983), *rev'd on other grounds,* 698 S.W.2d 667 (Tex.Cr.App. 1985). *See Torres v. State,* 161 Tex.Cr.R. 480, 278 S.W.2d 853, 857 (1955). Sanez has met this burden. In this case, the evidence establishes that there were seeds and stems in the marihuana. There is no evidence of the weight of these seeds and stalks. In his testimony, Johnson admitted that he could not give a "good estimate" of the weight of the marihuana without the seeds and stems. The burden of persuasion does not shift from the State to the accused simply because the accused has the burden of producing evidence to establish a defensive plea. *Elkins,* 543 S.W.2d at 650. Saenz's point of error is sustained.

The judgment is reversed, and an acquittal is ordered as to the offense of aggravated delivery of marihuana, Tex.Rev.Civ. Stat.Ann. art. 4476–15, § 4.05(c); however, since, in our opinion, the evidence is sufficient to support a conviction of delivery of marihuana under article 4476–15, section 4.05(a), (b)(5), or any lesser offense defined

---

**5.** Johnson determined the weight of the marihuana by weighing all of the marihuana in its wrapper, calculating the weight of the wrapper, and subtracting the weight of the wrappers from the gross weight of the marihuana.

**6.** Johnson testified as follows:
Q Are there any stems or stalks in any of those bags?
A There are stems and seeds in every bag.
Q Are there pieces of the stalk of the plant and seeds in there?
A Yes, sir. There are fragments of all those components in the bags.
Q Did you weigh out those portions?
A No. The net weight reflects the total net weight of all the plant material.
Q Whatever it is in that package is what got weighed by your calculation of estimating?
A Yes, sir. There's not a breakdown of the weight according to leaves, seeds, stems, and stalks.
Q Okay. Do you ever break it down by stalks and seeds?
A No. Only if there are very large, mature stalks, we'll separate those out and weigh them. In this case, I didn't see anything like that.
Q But there are pieces of stalk in there? There just not what you consider to be big stalks.
A Right.
Q And there are seeds in there?

A Oh, yes.
Q If you went through there and took out the pieces of the stalks and seeds, would you have any estimation as to how much those would weigh, or would you have any way of estimating?
A I can give you just a ballpark estimate because I've taken different plants, and I've done this too.
Q I mean based upon your examination of this sample, is there a way to—
A No. I really can't give you a good estimate there.

**7.** Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 1.02(22) (Vernon Supp.1987) provides:
"Marihuana" means the plant Cannabis sativa L., whether growing or not; the seeds thereof; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, or its seeds. However, it does not include the resin extracted from any part of such plant or any compound, manufacture, salt, derivative, mixture, or preparation of the resin; *nor does it include the mature stalks of the plant,* fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake, *or the sterilized seeds of the plant which is incapable of germination.* (Emphasis added.)

in section 4.05, the cause is remanded for retrial of Saenz for delivery of marihuana under section 4.05(a), (b)(5) or a lesser included offense as the State may elect.